[No. 557-2.    Division Two.    December 31, 1971.]

THE STATE OF WASHINGTON, *Respondent,* v. WILLIE B. GANT, *Appellant.*

*Stephen A. Mack* (of *Webster, Kroum, McCann, Granberg, Bass & Mack*), for appellant (appointed counsel for appeal).

*Christopher T. Bayley, Prosecuting Attorney,* and *Michael P. Ruark, Deputy,* for respondent.

PETRIE, C.J.—Defendant was convicted by jury verdict of felonious possession of numorphan, a narcotic drug. The primary issue presented by his appeal is whether or not the trial court committed error by not granting defendant's motion for new trial because of alleged misconduct of the deputy prosecuting attorney[1] in closing argument to the jury.

A partial recitation of the facts is necessary to place this assignment of error in proper perspective. When arrested, on November 14, 1969, a search of defendant's person revealed that a small coin purse in the pocket of his trousers contained four and three-fourths blue tablets and his wallet contained another such tablet wrapped in foil and a half tablet wrapped in tissue, all of which, by stipulation, were declared to be numorphan, a narcotic drug. Mr. Gant's defense was that these tablets were part of a prescription which had been ordered by his wife's physician for her use; that they were in his possession because her use of the medication was sporadic and indeed contraindicated when she consumed large quantities of alcohol; and that it was awkward to carry them on his person in their original container. In support of this theory of defense, defendant testified in his own behalf and also presented the testimony of his wife's physician and the druggist who filled a prescription of numorphan for his wife; but his wife, although present during trial, did not testify.

During final argument, the deputy prosecuting attorney

---

[1] Not the same attorney who represented respondent at this appeal.

twice referred to the wife's failure to testify in the following language:

His wife is the patient. His wife is sitting there. She never did testify, did she? She never testified about being a hard drinker, drinking wine every day. Of course, the State can't call a man's wife.

. . .

. . . He said the wife drinks wine every day. Was the wife called to testify she drinks wine every day or drinks anything anytime? The doctor said there was no such consideration. With the defendant, is that good faith?

MR. MACK: I have an objection. May I approach the bench?

(Brief conference with Court)

■ Unfortunately, the conference with the court has not been recorded. After such conference, the deputy prosecuting attorney continued with argument, without comment by the court, and without thereafter again referring to the defendant's wife's failure to testify. In its brief, the state concedes that the argument of the prosecutor injected error into the trial, but maintains that such error was not prejudicial. We cannot agree. In *State v. Swan*, 25 Wn.2d 319, 327, 171 P.2d 222 (1946), the court examined the nature of RCW 5.60.060, the statute which, except under circumstances not herein applicable, prohibits a wife from testifying against her husband:

There inheres in this statute the mandatory provision that no inference of guilt shall arise from the failure of a wife to testify for or against her husband, or for a husband to testify for or against the wife. It follows that the full protective force of the statute is not secured if the silence of the wife be construed against the husband in a criminal action like the case at bar. The remarks of the prosecuting attorney upon the failure of appellant to waive the privilege, which was his, of not permitting his wife to testify against him, constituted *prejudicial* comment.

(Italics ours.)

■ Futhermore, applying the test of prejudicial error set forth in *State v. Martin*, 73 Wn.2d 616, 440 P.2d

429 (1968), we cannot say from the record before us whether the defendant would or would not have been convicted but for the error committed. It must, therefore, be considered to be prejudicial.

Although the foregoing ruling disposes of this appeal, we deem it necessary to discuss several other assignments of error.

■ Defendant has assigned error to the trial court's failure to suppress evidence found on the defendant's person because it had been obtained as a result of an unlawful search and seizure. This matter was first brought to the attention of the trial court by way of a motion to dismiss the information at the close of the state's case. Defendant interposed no pretrial motion to suppress the evidence, nor did he object to its introduction during trial. Hence, for purposes of this appeal, we must consider the alleged error as not having been properly preserved. *State v. Duckett*, 73 Wn.2d 692, 440 P.2d 485 (1968); *State v. Baxter*, 68 Wn.2d 416, 413 P.2d 638 (1966).

We may reasonably anticipate, however, that upon retrial an appropriate pretrial motion to suppress the evidence will be made, at which time the trial court will make such factual findings as it deems appropriate. By discussing some of the facts surrounding defendant's arrest and search, we do not in any sense intend to limit or restrict the trial court from entering such facts as it deems necessary to resolve whatever issue may be presented. Defendant acknowledges that on the date of his arrest several police officers were conducting a search of his premises under authority of a valid search warrant when he approached the front door presumably intending to enter therein. Upon seeing strangers in his premises he turned and ran, but was apprehended by one of the officers who gave chase, returned to his premises, and there searched. Under such a factual pattern, it is our opinion that the search of the defendant's person was valid and the narcotics found on his person were properly admissible. *State v. Ryan*, 163 Wash. 496, 1 P.2d 893 (1931).

Defendant next challenges the trial court's instruction[2] advising the jury that a person to whom a narcotic drug has been sold by a druggist may lawfully possess such drug only in the container in which it was delivered to him. Defendant concedes that the instruction merely recites the appropriate statutory language of RCW 69.33.320, but contends that the statute is unconstitutionally vague, contains no reasonable standards, and if literally interpreted, would prohibit removal of the drug from its original container for any purpose whatsoever, even for the purpose of consuming it in accordance with the instructions of the prescribing physician. We do not reach the constitutional issue presented by the defendant because he does not fall within the ambit of the illustration he has hypothesized. *State v. Cashaw*, 4 Wn. App. 243, 480 P.2d 528 (1971). Furthermore, the jury was specifically instructed[3] that the statute does not prohibit a person from removing prescribed medication from the original container in order to take the drug in accordance with the instructions of the licensed physician. Our concern lies primarily with whether or not the defendant was granted ample opportunity to argue his theory of defense to the jury. We believe he was granted reasonable opportunity to argue his theory through an instruction[4] which told the jury that felonious

---

[2]Instruction No. 7 provided: "A person to whom or for whose use any narcotic drug has been prescribed, sold, or dispensed, by a physician, dentist, apothecary or other person authorized by law, may lawfully possess such drug only in the container in which it was delivered to him by the person selling or dispensing the same.

"The term 'apothecary' means a licensed pharmacist as defined by the laws of this state."

[3]Instruction No. 9 provided: "Even though a person may lawfully possess a narcotic drug only in the container in which it was delivered to him by the person selling or dispensing the same, that provision of the law does not prohibit a person from removing such prescribed medication from the container in order to take the drug in accordance with the instructions of the licensed physician who issued the prescription."

[4]Instruction No. 10 provided: "A person does not possess the necessary felonious intent to unlawfully possess narcotic drugs when he is acting in good faith and his possession is in accordance with the instructions of the prescribing physician."

intent to possess narcotic drugs did not exist when a person acts in good faith and in accordance with instructions of the prescribing physician. No exceptions were taken to either of these two latter instructions and they became the law of the case.

Finally, the defendant assigns error to repeated injections into the evidence and into the prosecutor's argument of references to "other unidentified pills" sometimes referred to as "drugs" found in the search of defendant's residence. The defendant's wife, but not the defendant, was charged[5] with the crime of possession of dangerous drugs. The trial court apparently permitted these repeated references to other drugs in defendant's residence on the theory that evidence of such drugs being left in the wife's presence was inconsistent with defendant's theory that he had retained possession of the narcotics to protect his wife from the combined effect of alcohol and narcotics; and also upon the prosecutor's express declaration that he could and would substantiate the identity of the other drugs. Their identity was never established and the jury was directed to disregard the repeated references thereto. Upon retrial, evidence of the wife's possession of other *narcotics,* if any, may be shown to rebut the defense theory, but not her possession of other drugs or pills, if any.

Judgment reversed and the cause remanded with direction to the trial court to grant the motion for a new trial.

PEARSON and ARMSTRONG, JJ., concur.

---

[5]On the morning of the opening day of defendant's trial, his wife entered a guilty plea to the crime of possession of dangerous drugs.