OPINION OF THE COURT
 

 Rosenblatt, J.
 

 The case before us involves the interplay of several themes in search warrant jurisprudence: the particularity requirement of the Fourth Amendment, overbreadth, sever-ability and the plain view doctrine. Here, a search warrant authorized police to search for four particularized items and “any other property the possession of which would be considered
 
 *83
 
 contraband.” While executing the warrant, police discovered several weapons in plain view, none of them enumerated in the warrant. The issue before us is whether overbroad language can be severed from an otherwise valid warrant and the plain view seizure upheld. On the facts presented here, we hold that it can.
 

 Defendant allegedly stole a tractor and asked his acquaintance, John DiDominico, to help him sell it. DiDominico owned a similar tractor and defendant wanted to switch Vehicle Identification Number (VIN) plates with DiDominico and transport the tractor out of the vicinity undetected. In return, defendant offered to cut DiDominico in on the sale proceeds.
 

 DiDominico informed the police of defendant’s plan. He told them how defendant stole the tractor from a nearby landowner, stashed it temporarily on State land and then moved it to a creek bed on DiDominico’s property. He also told them that defendant was preparing to transport the tractor to nearby Warsaw, New York. According to DiDominico, defendant had already removed the VIN plate from the stolen tractor, as well as a steel tow chain and a “top link bar,” part of a coupling device attached to the rear of the tractor. With DiDominico’s consent, police inspected the tractor. By tracing a hidden VIN number stamped inside the tractor, they located the owner, who confirmed that it was stolen.
 

 Police obtained a warrant authorizing them to search defendant’s property for the stolen tractor’s ignition key, the missing VIN plate, the steel chain, the top link bar and
 
 “any other property the possession of which would be considered
 
 contraband.” (Emphasis added.) In a supporting deposition attached to the warrant, DiDominico stated that defendant kept a variety of firearms on his property and had mentioned to him that two of his handguns were unregistered.
 

 While executing the warrant, the police discovered various guns, including a .357 magnum revolver and a .22 caliber semiautomatic pistol. The revolver was wrapped in plastic inside a floor vent in the rear bedroom of defendant’s trailer. The semiautomatic was wrapped in cloth, hidden in a jar underneath his bathroom sink. Both guns were loaded. By file-checking the guns over the phone, the police learned that they were unregistered and seized them. The officers also seized six blasting caps they found in a floor vent in defendant’s living room. They were not able to locate any of the items listed in the warrant.
 

 
 *84
 
 After indictment, defendant moved to suppress the guns and blasting caps, arguing that the warrant was unconstitutionally overbroad in that it authorized a general search for “any other property the possession of which would be considered contraband.” He also argued that the plain view doctrine did not authorize the seizure of the guns and blasting caps. Supreme Court held a suppression hearing in connection with the execution of the search warrant. The officers testified that at all times during the search they were looking for only the four enumerated items.
 

 The court denied defendant’s motion, holding that the over-broad language could be severed from the warrant and that the police lawfully seized the weapons in plain view while executing the valid (particularized) portion of the warrant. The Appellate Division unanimously affirmed. We likewise affirm.
 

 I. Particularity and Overbreadth
 

 The Fourth Amendment to the Constitution provides that no warrants shall issue except those “particularly describing the place to be searched, and the * * * things to be seized” (US Const 4th Amend). To meet the particularity requirement, the warrant’s directive must be “specific enough to leave no discretion to the executing officer”
 
 (People v Darling,
 
 95 NY2d 530, 537 [citing
 
 Andresen v Maryland,
 
 427 US 463, 480;
 
 Marron v United States,
 
 275 US 192, 196]). The requirement was designed to prohibit law enforcement agents from undertaking a general exploratory search of a person’s belongings
 
 (see, Coolidge v New Hampshire,
 
 403 US 443, 467). Indeed, indiscriminate searches pursuant to general warrants “were the immediate evils that motivated the framing and adoption of the Fourth Amendment”
 
 (Payton v New York,
 
 445 US 573, 583).
 
 [1]
 

 Contrary to the People’s contention, we hold that the warrant’s final directive, authorizing the search for “any other-property the possession of which would be considered contra
 
 *85
 
 band” was overbroad. It granted the executing officers unfettered discretion to look anywhere and seize anything they thought “would be considered contraband.” Had this been the only directive, the warrant would fail for lack of particularity and any evidence seized under it would be suppressed
 
 (e.g., People v Nieves,
 
 36 NY2d 396, 405).
 

 II. Severability
 

 We must next determine whether the overbroad directive invalidates the entire warrant. The warrant described four items — the stolen tractor’s ignition key, the missing VIN plate, the steel chain and the top link bar — with particularity sufficient to satisfy the Fourth Amendment. Defendant argues that notwithstanding these particularized directives the additional authorization to search for “any other * * * contraband” poisoned the warrant as a whole, allowing a general search. The People ask us to sever the unparticularized directive and sustain the warrant insofar as it authorized the seizure of the particularized items.
 

 It is now settled law that when a search warrant is partially but not wholly invalid, only the fruits of the invalid portion need be suppressed. We first recognized this in
 
 People v Hansen
 
 (38 NY2d 17 [1975]). There, the warrant authorized police to search a residence and a van for drug contraband. The Court determined that the police had probable cause to search the residence but not the van
 
 (see, People v Hansen, supra,
 
 at 19-20). We severed the invalid portion (suppressing the evidence seized from the van) and upheld the valid portion (admitting the evidence seized from the residence)
 
 (see, People v Hansen, supra,
 
 at 21-22). As one commentator notes, it would be “harsh medicine indeed” if a partially valid warrant were to be invalidated in toto merely because it erroneously permitted a search for additional items (2 Wayne R. LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 4.6 [f], at 581-582 [3d ed]).
 

 Attempting to distinguish
 
 Hansen,
 
 defendant contends that the severance doctrine cannot be applied to any warrant that contains a provision authorizing a general search. To deter general searches, defendant argues,
 
 all
 
 evidence seized during execution of an overbroad warrant should be sup
 
 *86
 
 pressed.
 
 [2]
 
 We disagree and hold that the severance doctrine is equally applicable in the context of the partially overbroad warrant here. Indeed, other New York courts, relying on
 
 Hansen,
 
 have severed unconstitutionally overbroad directives like the one before us, upholding seizures under the remaining particularized portions
 
 (see, e.g., People v Conte,
 
 159 AD2d 993, 994 [sustaining seizure of evidence particularized in warrant even though portion of warrant impermissibly authorized police to seize “other contraband”];
 
 People v Niemczycki,
 
 67 AD2d 442, 444 [sustaining seizure of particularized item even though warrant also authorized seizure of “any other contraband”];
 
 People v Haas,
 
 55 AD2d 683 [severing portion of warrant authorizing a search for “stolen goods” and admitting evidence particularly described in valid remainder]). By admitting evidence seized pursuant to the particularized portion, these courts strike what we regard as the proper balance between deterring overbroad searches and the need to introduce validly seized evidence in prosecuting criminal activity.
 

 We have a further complication not present in
 
 Hansen.
 
 Unlike the case before us,
 
 Hansen
 
 involved the seizure of evidence specifically authorized in the valid (unsevered) portion of the warrant. Thus, there was no doubt that the evidence seized was not the fruit of the warrant’s invalid directive. Here, however, the items seized were not enumerated in the warrant. Defendant argues that it is entirely possible that the guns and blasting caps
 
 were
 
 the fruits of the overbroad directive to seize “any other * * * contraband.” This possibility, defendant contends, renders them inadmissible.
 

 
 *87
 
 Defendant relies on
 
 People v Giordano
 
 (72 AD2d 550). There, an otherwise particularized warrant also authorized a search for “any other contraband.” While executing the warrant the police seized unenumerated weapons in plain view. The court refused to sever the overbroad directive and suppressed the weapons, stating that it was “impossible to tell” whether the police were executing the valid or invalid portion of the warrant when they seized the unenumerated items in plain view
 
 (People v Giordano, supra,
 
 at 551).
 

 Under
 
 Giordano,
 
 the plain view doctrine is inapplicable as a matter of law whenever a warrant contains an invalid directive and the evidence seized in plain view fits within that directive. This rule is not called for by the Constitution or our decisional law.
 
 [3]
 
 The better approach is to sever the invalid directive and apply the plain view doctrine to the valid remainder. Thus, if at the time of seizure, the executing officers were not intruding upon the individual’s expectation of privacy more than was necessary to execute the valid portion of the warrant, the Fourth Amendment does not require suppression.
 

 This approach has been embraced by numerous other courts
 
 [4]
 
 and accommodates the needs of law enforcement as well as the privacy interests that underlie the Fourth Amendment. Moreover, it is faithful to the Fourth Amendment’s insistence that a neutral and detached magistrate decide when someone’s privacy may be invaded. Here, the evidence was discovered
 
 *88
 
 only after the judge properly authorized the officers to enter defendant’s residence to search for particularized items based on a showing of probable cause.
 

 There are, however, limits to this approach. Severance is feasible here because the warrant was largely specific and based on probable cause. Only the tail end contained the regrettable phrase, “any other * * * contraband.” We emphasize that this phrase should not be used in search warrants because, when alone, it epitomizes the general warrant, a command so antithetical to our forebearers’ sensibilities that they drafted the Fourth Amendment to abolish it. Unfortunate phrases like “any contraband” or “any other contraband” have nevertheless appeared often enough in search warrants as to have created a sizeable body of law
 
 (see generally,
 
 Martin J. McMahon, Annotation,
 
 Propriety in Federal Prosecution of Severance of Partially Valid Search Warrant and Limitation of Suppression to Items Seized Under Invalid Portions of Warrant,
 
 69 ALR Fed 522, § 3, at 527-532). The inclusion of this type of phrase jeopardizes search warrants that are otherwise perfectly valid and fully serviceable. Whether this is the result of bad habits or the use of old forms, the phrase is obnoxious to the principles of the Fourth Amendment and has no valid place in search warrants.
 

 We therefore conclude that the overbroad authorization to search for “any other * * * contraband” may be severed from the warrant. Inasmuch as the items seized were not named in the warrant, we must determine whether they are admissible under the plain view doctrine.
 

 III. Plain View Doctrine
 

 The Fourth Amendment prohibits “unreasonable searches and seizures” (US Const 4th Amend). The seizure of an individual’s property without obtaining a warrant is per se unreasonable, subject to several narrow, well-defined exceptions
 
 (see, People v Diaz,
 
 81 NY2d 106, 110;
 
 see also, Thompson v Louisiana,
 
 469 US 17, 19-20). One such exception is the plain view doctrine, a judicially formulated concept first enunciated by the Supreme Court in
 
 Coolidge v New Hamphsire
 
 (403 US 443,
 
 supra; see generally, Twenty-Ninth Review of Criminal Procedure, Warrantless Searches and Seizures,
 
 88 Geo L J 912, 934 n 174). The doctrine rests on the premise that police should be able to seize incriminating evidence in plain view if they had the right to be where they were when they saw it. Critically, such a seizure involves no invasion beyond what the
 
 *89
 
 warrant (or some other exception to the warrant requirement) allows
 
 (see, People v Diaz, supra,
 
 at 111;
 
 see also, Blasich,
 
 73 NY2d 673, 677).
 

 As we stated in
 
 People v Diaz (supra,
 
 at 110), law enforcement officers may properly seize an item in “plain view” without a warrant if (i) they are lawfully in a position to observe the item; (ii) they have lawful access to the item itself when they seize it; and (iii) the incriminating character of the item is immediately apparent
 
 (see also, Horton v California,
 
 496 US 128, 136-137). Defendant argues that the first requirement of the plain view doctrine has not been satisfied. He asserts that because they were executing an unconstitutional general warrant the police were not lawfully on his property when they encountered the guns and blasting caps. We disagree. Although the warrant was partially invalid, that defect — as we have concluded — did not strip the police of the authority to enter upon defendant’s premises to search for the particularized items.
 

 Once the overbroad portion is severed from the warrant, we adjudge the propriety of the search and seizure based on a straightforward application of the plain view doctrine. The constitutionality of a plain view seizure “must turn on the legality of the intrusion that enables [police] to perceive and physically seize the property in question”
 
 (Texas v Brown,
 
 460 US 730, 737). The valid portion of the warrant determines the permissible scope and intensity of the search
 
 (see, United States v George, supra,
 
 975 F2d 72, 80 [“In determining whether the (plain view) doctrine applies in the case of a redacted warrant the trial court must therefore ask if, when the officers came upon the item found in plain view, they were in a place where the
 
 redacted
 
 warrant * * * authorized them to be.”]).
 
 [5]
 

 Focusing on when and where the plain view item was seized, the suppression court is able to determine whether the seizure occurred within the scope of the valid portion of the warrant. To prevail, the People must establish that the executing officers (i) found the item in a place where one reasonably would have expected to look while searching for an object particularly
 
 *90
 
 described and (ii) found it before they found all the objects described in the valid portion of the warrant
 
 (see, United States v Fitzgerald, supra,
 
 724 F2d 633, 637;
 
 United States v George,
 
 supra, 975 F2d, at 80;
 
 see generally,
 
 2 LaFave, Search and Seizure,
 
 supra,
 
 § 4.6 [f], at 582-583).
 
 [6]
 
 This is largely a factual determination involving the size and character of the enumerated object and where one would reasonably look for it. The police, to put it graphically, may not open dresser drawers searching for a stolen piano. If the People fail to meet these conditions, the police were necessarily searching beyond the scope and intensity of the valid portion of the warrant and the evidence must be suppressed.
 

 Here, the warrant — to the extent it authorized a search for and seizure of the tractor ignition key and the VIN plate— provided the executing officers lawful access to defendant’s home and anything in it that might contain either item. Accordingly, we have no basis to disturb Supreme Court’s determination that the police discovered the guns and blasting caps in plain view within the scope of the valid portion of the warrant.
 

 Defendant’s remaining contentions are without merit.
 

 Accordingly, the order of the Appellate Division should be affirmed.
 

 Chief Judge Kaye and Judges Smith, Levine, Ciparick, Wesley and Graffeo concur.
 

 Order affirmed.
 

 [1]
 

 .
 
 See also,
 
 Wroth & Zobel, Editorial Note, 2 Legal Papers of John Adams 106, 116 (1965) (commenting on colonists’ “widespread resistance to general warrants which led ultimately to the prohibition against unreasonable searches and seizures in the Fourth Amendment”);
 
 see generally,
 
 Patrick T. Conley & John P. Kaminski, The Bill of Rights and the States: The Colonial and Revolutionary Origins of American Liberties, at 500-501 (1992) (compiling various sources that trace origins of Fourth Amendment); Thurston Greene, The Language of the Constitution, at 783-785 (1991) (cataloguing the numerous materials — including State Constitutions — that condemned general searches and seizures prior to enactment of the Bill of Rights).
 

 [2]
 

 . There is limited case support for this argument (see,
 
 e.g., People v Bradford,
 
 81 Misc 2d 320, 323 [finding warrant “hopelessly tainted” by a directive to seize “any evidence tending to prove other robberies”];
 
 United States v Burch,
 
 432 F Supp 961, 964 [refusing to sever directive to seize “other unknown articles which are believed and reported to be stolen”];
 
 accord, In re LaFayette Academy,
 
 462 F Supp 767, 774;
 
 Kinsey v State,
 
 602 P2d 240, 243 [Okla Crim App 1979]). These cases rest on the premise that the Fourth Amendment was designed specifically to prohibit general searches and that the inclusion of several particularized directives does not change the character of the warrant as one authorizing a general search. The overwhelming majority of courts, however, reject this analysis and sever the overbroad directive
 
 (see, United States v Brown,
 
 984 F2d 1074, 1077 [10th Cir] [citing at least eight circuits holding that “where a warrant contains both specific as well as unconstitutionally broad language, the broad portion may be redacted and the balance of the warrant considered valid”];
 
 United States v Riggs,
 
 690 F2d 298, 300 [1st Cir] [noting that weight of authority favors severance in context of partially overbroad warrants];
 
 State v Tucker,
 
 133 NH 204, 208-209, 575 A2d 810, 813-814 [1990];
 
 State v Kealoha,
 
 62 Haw 166, 177-178, 613 P2d 645, 652-653 [1980]).
 

 [3]
 

 . To the extent that the courts in
 
 People v Conte (supra,
 
 159 AD2d 993) and
 
 People v Niemczycki (supra,
 
 67 AD2d 442) may have suppressed contraband seized in open view, those cases, like
 
 Giordano,
 
 should not be followed.
 

 [4]
 

 .
 
 See, United States v George,
 
 975 F2d 72, 79 (2d Cir) (severing directive to search for “any other evidence relating to the commission of a crime” and remanding to determine whether guns were found in plain view within scope of lawful portion of warrant);
 
 Commonwealth v Lett,
 
 393 Mass 141, 147, 470 NE2d 110, 114-115 (severing directive to seize heroin for lack of probable cause and upholding seizure of heroin under the plain view doctrine);
 
 State v Bussard,
 
 114 Idaho 781, 787-788, 760 P2d 1197, 1203-1204 (1988) (severing directive to search for “miscellaneous * * * jewelry” and admitting jewelry found in plain view);
 
 accord, Palmer v State,
 
 426 So 2d 950, 952 (Ala Crim App 1983);
 
 Commonwealth v Casuccio,
 
 308 Pa Super 450, 465-471, 454 A2d 621, 629-631 (1982);
 
 State v Sagner,
 
 12 Ore App 459, 470-473, 506 P2d 510, 516-517 (1973);
 
 see also, United States v Brown, supra,
 
 984 F2d 1074, 1078 (applying plain view doctrine to severed warrant);
 
 United States v Reed,
 
 726 F2d 339, 342-343 (same);
 
 United States v Fitzgerald,
 
 724 F2d 633, 637 (same);
 
 United States v Freeman,
 
 685 F2d 942, 953-954 (same);
 
 Carney v State,
 
 525 So 2d 776, 785 (Miss 1988);
 
 Butler v State,
 
 130 Ga App 469, 473-474, 203 SE2d 558, 563 (1973).
 

 [5]
 

 .
 
 See also, United States v Freeman, supra,
 
 685 F2d 942, 953 (“[A] careful inquiry into the scope and duration of the search is necessary in the case of a severed warrant [and seizure under the plain view doctrine].”);
 
 Commonwealth v Lett, supra,
 
 393 Mass 141, 147, 470 NE2d 110, 115 (“The proper inquiry * * * [is] whether the items seized in plain view were seized within the scope and intensity of the search permitted under the terms of the valid portions of the warrant.”).
 

 [6]
 

 . [5] Inasmuch as a neutral magistrate did not specifically authorize seizure of the guns and blasting caps in a warrant, it is appropriate that the People have the burden of demonstrating the legitimacy of the plain view seizure (see,
 
 Coolidge v New Hampshire, supra,
 
 403 US 443, 455;
 
 United States v Kiyuyung,
 
 171 F3d 78, 83-84;
 
 see also, People v Hodge,
 
 44 NY2d 553, 557 [“All warrantless searches presumptively are unreasonable per se * * *. Where a warrant has not been obtained, it is the People who have the burden of overcoming that presumption.”]).